# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| KELCIE INGRAM and CYNTHIA INGRAM, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | **Case No. 3:20-cv-00037** |
| | ) | **Judge Aleta A. Trauger** |
| NEUTRON HOLDINGS, INC. d/b/a LIMEBIKE a/k/a LIME, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM

Before the court is the Motion to Compel Arbitration and dismiss the case or, alternatively, stay it pending arbitration, filed by defendant Neutron Holdings, Inc. d/b/a LimeBike a/k/a Lime ("Lime") (Doc. No. 10). For the reasons set forth herein, the motion will be granted, and this action will be stayed pending the completion of arbitration.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs Kelcie Ingram and Cynthia Ingram, both residents of Davidson County, Tennessee, filed a Complaint in the Circuit Court for Davidson County, Tennessee on December 6, 2019, asserting a claim of negligence against defendant Lime and seeking damages of up to $750,000, arising from personal injuries suffered by plaintiff Kelcie Ingram and medical expenses incurred by both plaintiffs.[1] Lime, a Delaware corporation whose principal place of business is in

---

[1] Cynthia Ingram is not identified in the Complaint and is not referenced therein except in the introductory paragraph (confirming that she is a plaintiff) and in the first paragraph (stating that both plaintiffs are residents of Davidson County, Tennessee). (Doc. No. 10-1, at 1 & ¶ 1.) It appears from documents submitted by the defendant in connection with removal that Cynthia

California, removed the action to federal court on the basis of diversity jurisdiction on January 10, 2020. (Doc. No. 1.)

According to the allegations in the Complaint, Lime is in the business of providing, among other things, dockless electric scooter rentals in downtown Nashville, among other locations, through a downloadable software application accessible through a smartphone (the "Lime app"). To locate and unlock a Lime scooter, a user must first download the Lime app to her telephone and create a user account. As part of that process, the user confirms, by proceeding, that she is "at least 18 years old" and has "read and agreed to Lime's User Agreement and Terms of Service." (Compl. ¶ 11.) Lime's terms of service also require users to be at least 18 years old to use a scooter. (*Id.* ¶ 14.) The plaintiffs allege, however, that "the only requirement to open [a user account] is a valid payment source" and that the Lime app is "designed to make it easy to create an account so that the only obstacle to its use [is] proving an ability to pay [Lime's] fees." (*Id.* ¶¶ 12, 15.) Moreover, the app "has no procedure in place to ensure [Lime's] scooters are only accessible to a legal adult who is at least 18 years old." (*Id.* ¶ 16.)

Kelcie Ingram was 17 years old on December 29, 2018. On that date, she accessed the Lime app on her smartphone and, through the app, located, rented, and began riding a Lime scooter on Second Avenue in downtown Nashville, Tennessee. Lime did not request any verification of her age to rent the scooter. Shortly after she began riding the Lime scooter, as she was crossing a street, Kelcie Ingram "struck a large rock, causing the scooter to flip." (*Id.* ¶ 23.) The plaintiffs allege that Lime is "100% at fault for the crash." (*Id.* ¶ 25.) As a result of the crash, Kelcie Ingram "suffered serious and painful personal injuries which have required and continue to require medical

---

Ingram is Kelcie's mother, and she seeks to recover medical expenses incurred as a result of injuries suffered by her daughter. (*See* Doc. No. 1-3, at 7.)

treatment," and the plaintiffs "have incurred and continue to incur . . . significant medical expenses." (*Id.* ¶¶ 27, 28.) The plaintiffs allege that Lime was negligent in attempting to contract with a minor, in allowing a minor to use its services, and in failing to verify that its user met the age requirements specified by its own Terms of Service and the municipal code of Metropolitan Nashville and Davidson County.

Lime answered the Complaint, denying liability and asserting various defenses, including that the claims are subject to a binding arbitration agreement. (Doc. No. 6.) On March 19, 2020, Lime filed its Motion to Compel Arbitration. (Doc. No. 10.) The plaintiffs have filed a Response, generally arguing that (1) the contract containing the arbitration provision is voidable based on Kelcie Ingram's age at the time of contracting, has been repudiated by Kelcie's having brought the lawsuit, and is therefore unenforceable; and (2) the arbitration provision is unconscionable and therefore unenforceable. (Doc. No. 11, at 1.) The defendant filed a Reply (Doc. No. 12), asserting that the issues raised by the plaintiff must be decided by the arbitrator and that, in any event, Kelcie is estopped from repudiating the contract, having misrepresented her age upon entering into the contract.

## II.     STANDARD OF REVIEW

The Federal Arbitration Act ("FAA") allows parties to a "contract evidencing a transaction involving commerce" to agree that certain disputes between them arising from such "contract or transaction" will be decided by an arbitrator rather than by a court. 9 U.S.C. § 2. Described by the Supreme Court as the "primary substantive provision" of the FAA, *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983), Section 2 further provides that any such agreement to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. This section embodies "a liberal federal policy favoring arbitration." *AT & T Mobility LLC v. Concepcion*, 563 U.S. 333,

339 (2011) (quoting *Moses H. Cone*, 460 U.S. at 24). The principal purpose of the FAA is to ensure the enforcement of private arbitration agreements according to their terms; the broader purpose of allowing parties to submit grievances to arbitration is to facilitate "efficient, streamlined procedures tailored to the type of dispute" at issue. *Id.* at 344 (citations omitted); *see also Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000) ("The FAA was designed to override judicial reluctance to enforce arbitration agreements, to relieve court congestion, and to provide parties with a speedier and less costly alternative to litigation.").

At the same time, despite this liberal federal policy favoring arbitration agreements, arbitration is a "matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT & T Techs. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986); *see also GGNSC Louisville Hillcreek, LLC v. Estate of Bramer*, 932 F.3d 480, 485 (6th Cir. 2019) ("An agreement to arbitrate is fundamentally a matter of consent."). When considering a motion to compel arbitration, a district court must determine, as a threshold matter, if the parties agreed to arbitrate. *McGee v. Armstrong*, 941 F.3d 859, 865 (6th Cir. 2019); *Stout*, 228 F.3d at 714. The court must "use state law to assess the existence of an agreement." *GGNSC Louisville*, 932 F.3d at 485 (citations omitted). Generally, "[t]he question of arbitrability is one for the courts unless the parties 'clearly and unmistakably provide otherwise.'" *McGee v. Armstrong*, 941 F.3d 859, 865–66 (6th Cir. 2019) (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002)).

## III. DISCUSSION

### A. The Parties' Arguments

In its Motion, the defendant argues that Kelcie Ingram entered into a valid, enforceable contract with Lime when she registered to use the Lime app and rented a scooter using the app, the terms of which are set forth in Lime's User Agreement & Terms of Service ("User

Agreement"), which contained a valid and enforceable binding arbitration provision ("Arbitration Provision"). (Doc. No. 10, at 2.) The Arbitration Provision specifies in bold, capitalized font that any and all disputes between the user and Lime are to be submitted to "FINAL AND BINDING ARBITRATION" (*id.* at 5), and any dispute will be governed by the "then-current Commercial Arbitration Rules of the Judicial Arbitration and Mediation Services Inc. ('JAMS')" (*id.* at 6). The defendant maintains that the Arbitration Provision and the JAMS rules both contain "delegation provisions" that require the arbitrator to decide all issues of arbitrability, "including disputes over the formation, existence, [and] validity" of the agreement. (*Id.*). The defendant also contends that the delegation provisions are sufficiently broad to require an arbitrator to decide any claim that the contract is voidable or void based on Kelcie Ingram's age at the time of contracting or that the arbitration provision is unconscionable. Alternatively, Lime asserts that, even if the court considers these issues rather than referring them to arbitration, Kelcie Ingram should be estopped from disaffirming the transaction based on her age as a result of having misrepresented her age upon entering into the contract. Further, it contends that, because Cynthia Ingram appears to be asserting only a claim to recover medical expenses incurred as a result of injuries to a minor child, her claim is derivative of Kelcie's, making her claim subject to arbitration as well. Lime argues that, because all claims are subject to arbitration, the lawsuit should be dismissed rather than stayed.

In their Response (Doc. No. 11), the plaintiffs do not dispute that Kelcie Ingram entered into the User Agreement with Lime, which included an Arbitration Provision, and they do not contest Lime's characterization of the terms of the Arbitration Agreement or the delegation provisions. They also do not contest Lime's assertion that Cynthia Ingram's derivative claim will be subject to arbitration to the same extent as Kelcie's claims. Instead, they contend only that the entire contract containing the Arbitration Provision was voidable as a result of Kelcie's having

been a minor at the time of contracting and that she repudiated it upon filing this lawsuit, rendering it unenforceable as a whole. In addition, they assert that the Arbitration Provision itself is invalid because unconscionable. It is problematic that the plaintiffs do not directly address the defendant's contention that the arbitrator, rather than the court, must consider both whether Kelcie effectively repudiated the agreement as a whole and whether the arbitration provision is unconscionable. Instead, they argue very generally that "the Court must determine whether there is a valid contract which requires Plaintiffs to submit their claim to arbitration." (Doc. No. 11, at 2 (citing *In re: Auto. Parts Antitrust Litig.*, 951 F.3d 377 (6th Cir. 2020)).) The plaintiffs also do not address the alternative argument that Kelcie is estopped from disaffirming the contract based on having misrepresented her age at the time of contracting.

### B. Who Decides the Repudiation Question?

"Generally, 'whether the parties are bound by a given arbitration clause raises a question of arbitrability for a court to decide.'" *In re: Auto. Parts Antitrust Litig.*, 951 F.3d at 381 (quoting *Howsam*, 537 U.S. at 84) (some internal quotation marks omitted). However, the parties may instead "agree to have an arbitrator decide not only the merits of a particular dispute but also 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Id.* at 381–82 (quoting *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019)). Such an agreement, referred to as a "delegation provision," "is simply an additional, antecedent agreement" "to arbitrate a gateway issue," which "the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other." *Id.* at 382 (quoting *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 70 (2010)). To be effective, a delegation provision must "clearly and unmistakably" show that the parties intended the question of arbitrability to be decided by the arbitrator. *McGee*, 941 F.3d at 865–66 (quoting *Howsam*, 537 U.S. at 83).

As the Sixth Circuit explained recently,

> [a] court may order arbitration of a particular dispute only where the court is satisfied that the parties agreed to arbitrate *that dispute*. Stated another way, "courts should order arbitration of a dispute only where the court is satisfied that neither the formation of the parties' arbitration agreement nor (*absent a valid provision specifically committing such disputes to an arbitrator*) its enforceability or applicability to the dispute is in issue. Where a party contests either or both matters, 'the court' must resolve the disagreement."

*In re: Auto. Parts Antitrust Litig.*, 951 F.3d at 382–83 (quoting *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 297, 299–300 (2010)) (second emphasis added). In other words, whether an arbitration agreement was *formed* is always a question to be resolved by the court, and whether the arbitration agreement is *enforceable* or covers a particular claim is also typically a question for the court *unless* it has been effectively delegated to the arbitrator.

As indicated above, the plaintiffs here do not contest the formation of a contract containing an Arbitration Provision. Instead, they contest the enforceability, not simply of the Arbitration Provision, but of the entirety of the User Agreement of which it is a part. The Arbitration Provision in this case specifies that "any and all disputes," defined as "any controversy, allegation, or claim aris[ing] out of or relat[ing] to the Services, the Content, Your User Submissions, this Agreement, or any Additional Terms," whether "arising before or after the effective date of this agreement, must be resolved by final and binding arbitration." (Doc. No. 10-2, at 19, User Agreement ¶¶ 2.2, 2.3.) It further states: "All issues are for the arbitrator to decide, including arbitrability." (*Id.* at 20, User Agreement ¶ 2.4). In addition, the Arbitration Provision states that any dispute will be resolved "in accordance with the then-current Commercial Arbitration Rules of the Judicial Arbitration and Mediation Services Inc. ('JAMS')," and it provides a link to those rules, at http://www.jamsadr.com. (*Id.*) The JAMS rules themselves similarly require that questions of arbitrability, "including disputes over the formation, existence, validity, interpretation or scope of

the agreement under which Arbitration is sought . . . shall be submitted to and ruled on by the Arbitrator." (*Id.* at 68, JAMS Rule 8(b).) Lime asserts, and the plaintiffs do not dispute, that Kelcie agreed to Lime's User Agreement, including the Arbitration Provision, when she used the Lime App to rent a scooter, and that the User Agreement's own delegation provision, coupled with the User Agreement's adoption of the JAMS rules that also delegate the issue of arbitrability, "clearly and unmistakably" delegates all issues of arbitrability to the arbitrator. (Doc. No. 10, at 11.)[2]

Lime, that is, frames the question of whether Kelcie effectively voided the User Agreement in its entirety by disaffirming it when she filed this lawsuit as a question of arbitrability that must be decided by the arbitrator. It equates Kelcie's claim that she repudiated the agreement through the application of the infancy doctrine to other legal doctrines that permit parties to set aside an agreement, such as fraudulent inducement. For their part, the plaintiffs simply presume, without discussion, that Kelcie's repudiation of the User Agreement renders it a nullity, leaving no contract to be enforced and no issue of arbitrability to be decided.

The parties have not pointed to, and the court's own research has not unearthed, any other judicial opinions addressing the issue presented here, which is whether a minor's repudiation of a contract raises a question of arbitrability or whether it goes, instead, to the question of contract formation. More specifically, does a delegation clause in an arbitration agreement extend to the issue of whether a juvenile has effectively repudiated the contract containing the arbitration agreement? The court concludes that the defense of infancy, which the plaintiffs claim rendered the User Agreement void, is effectively indistinguishable from other defenses such as fraud in the inducement that, if proven, provide grounds for rescission of a contract. The Supreme Court's

---

[2] The plaintiffs do not dispute that the Arbitration Provision incorporates delegation provisions, and they do not contend that the delegation provisions are not clear and unmistakable. The court, therefore, presumes that they are.

treatment of similar defenses confirms that the question is one of arbitrability.

As an initial matter, it is abundantly clear that the doctrine of infancy may provide a basis for rescission of a contract under Tennessee law. For example, in *Harwell Motor Co. v. Cunningham*, 337 S.W.2d 765 (Tenn. Ct. App. 1959), plaintiff Cunningham brought suit for rescission of a contract to purchase a vehicle and for recovery of the purchase price, based on his having been a minor at the time of contracting. The trial court granted relief to the plaintiff and awarded him the purchase price of the vehicle, finding as a factual matter that the plaintiff was a minor at the time of contracting, the defendant was aware of the plaintiff's age, and the plaintiff had not ratified the contract upon reaching the age of majority. The appellate court affirmed, reciting the doctrine of infancy as applied by Tennessee courts: "[C]ontracts of a minor, unless for necessaries, . . . are voidable by the minor at his election upon attaining majority." *Id.* at 257.

More recently, the doctrine of infancy has been applied to permit a minor to rescind arbitration agreements, in Tennessee and elsewhere. *See, e.g.*, *Stroupes v. Finish Line, Inc.*, No. 1:04-CV-133, 2005 WL 5610231, at *2, 4 (E.D. Tenn. Mar. 16, 2005) (where a sixteen-year-old girl signed an arbitration agreement when she began working for the defendant and later filed suit under Title VII and state law for sexual harassment, among other claims, the court denied the defendant's motion to compel arbitration under the FAA on the basis that the plaintiff had been a minor when she signed the arbitration agreement and she had repudiated the agreement when she filed the lawsuit); *Doe v. Epic Games, Inc.*, No. 19-CV-03629-YGR, 2020 WL 376573, at *2 5 (N.D. Cal. Jan. 23, 2020) (finding the minor plaintiff had validly disaffirmed the user agreement containing an arbitration provision and therefore denying the motion to compel arbitration); *R.A. v. Epic Games, Inc.*, No. CV 19-1488-GW-EX, 2019 WL 6792801 (C.D. Cal. July 30, 2019) (same: where the defendant moved to compel arbitration and the plaintiff raised the infancy

doctrine as a defense, stating "before assessing whether Epic can compel Plaintiff to arbitrate, the Court must consider whether Plaintiff validly disaffirmed" the user agreement). These cases establish the principle that a minor can form a valid, binding contract, including a contract calling for arbitration of disputes, and that such a contract is voidable upon the minor's election, assuming certain conditions are met. In that sense, although none of these cases concerned a delegation provision, they also confirm that the defense of infancy is similar in effect to a defense of fraud in the inducement which, if proven, likewise allows an individual to treat the contract as void and to sue for the equitable remedy of rescission. *See, e.g.*, *Vance v. Schulder*, 547 S.W.2d 927, 931 (Tenn. 1977) ("An individual induced by fraud to enter into a contract may elect [to] treat the contract as voidable and sue for the equitable remedy of rescission.").

Although the Supreme Court has not addressed the effect of a delegation clause in the context of a minor's claim of infancy to avoid an arbitration agreement, it has addressed such defenses as fraud in the inducement and unconscionability. Moreover, in the context of such defenses, it has progressively narrowed the scope of the courts' review of arbitrability generally. First, as relevant here, the Court held in *Prima Paint Corp. v. Flood & Conklin MFG., Co.*, 388 U.S. 395 (1967), that, when an agreement incorporates an arbitration provision and a party challenges the agreement as a whole, rather than the arbitration provision *per se*, based, for example, on a claim that the entire agreement was fraudulently induced, the arbitrator, rather than the court, considers the challenge to the validity of the entire agreement. If, on the other hand, a party challenges only the validity of the arbitration provision itself, for example, by arguing that the arbitration provision specifically was fraudulently induced, then the court, rather than the arbitrator, must consider such a threshold challenge. *See id.* at 403–04 ("Accordingly, if the claim is fraud in the inducement of the arbitration clause itself—an issue which goes to the 'making' of

the agreement to arbitrate—the federal court may proceed to adjudicate it. But the statutory language [of the FAA] does not permit the federal court to consider claims of fraud in the inducement of the contract generally.").

Next, the Supreme Court extended this principle to challenges to arbitration agreements that contain, within them, a delegation provision. In *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63 (2010), the precise question before the Court was "whether, under the [FAA], a district court may decide a claim that an arbitration agreement is unconscionable, where the agreement explicitly assigns that decision to the arbitrator." *Id.* at 65. There, the Court again recognized the general principle that arbitration agreements, under the FAA, are "on equal footing with other contracts" and, like other contracts, "may be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability.'" *Id.* at 67–68 (quoting *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)). However, the FAA also establishes that a court "shall" order arbitration "upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue." *Id.* at 68 (quoting 9 U.S.C. § 4). At issue in *Rent-A-Center* was a delegation provision referring to the arbitrator any dispute "relating to the . . . enforceability . . . of this Agreement including, but not limited to any claim that all or any part of this agreement is void or voidable." *Id.* at 68.

The plaintiff argued that the arbitration agreement *per se* was unconscionable and that the court had to decide this issue. And, under *Prima Paint*, in the absence of a delegation provision, the question of the unconscionability of the arbitration provision itself would have been a question for the court. The Supreme Court found, however, that a delegation provision is "simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other." *Rent-*

*A-Center*, 561 U.S. at 70. That is, such an additional agreement is itself valid, "save upon such grounds as exist at law or in equity for the revocation of any contract." *Id.* (quoting 9 U.S.C. § 2). The plaintiff, however, did not challenge the delegation clause but only the arbitration agreement as a whole.

The Court began its analysis by recognizing two types of "validity" challenges under § 2: "One type challenges specifically the validity of the agreement to arbitrate," and "[t]he other challenges the contract as a whole, either on a ground that directly affects the entire agreement (*e.g.*, the agreement was fraudulently induced), or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid." *Id.* at 70 (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 (2006)). Under Supreme Court precedent, only the first type of challenge is "relevant to a court's determination whether the arbitration agreement at issue is enforceable," because § 2 of the FAA refers to the validity of arbitration provisions "*without mention* of the validity of the contract in which it is contained." *Id*. Further, the Court reasoned, a challenge to the contract *as a whole* "does not prevent a court from enforcing a specific agreement to arbitrate," because arbitration provisions are "severable from the remainder of the contract." *Id.* (quoting *Buckeye*, 546 U.S. at 445).

Severability does not mean unassailability, however. Thus, the Court concluded, if a party challenges the validity of "the precise agreement to arbitrate at issue," then the court must consider the validity of that provision before compelling arbitration. *Id.* at 71. The Court explained, for example, that if the plaintiff in *Prima Paint* had challenged the arbitration provision as fraudulently induced, rather than claiming that the entire agreement containing the arbitration provision had been fraudulently induced, the district court would have had to consider that question. Similarly, in the case before it, if the plaintiff had challenged the *delegation* provision, which the Court

considered to be a separate and antecedent arbitration agreement, the district court would have had to address that issue rather than referring it to the arbitrator. Because the plaintiff challenged the validity of the entire arbitration agreement, that is, the entirety of the agreement that incorporated the delegation provision, the issue was reserved, by the delegation provision itself, to the arbitrator. This was so, the Court held, even when the arguments as to why the arbitration provision was unconscionable applied equally to the delegation provision:

> In some cases the claimed basis of invalidity for the contract as a whole will be much easier to establish than the same basis as applied only to the severable agreement to arbitrate. . . . But even where that is not the case—as in *Prima Paint* itself, where the alleged fraud that induced the whole contract equally induced the agreement to arbitrate which was part of that contract—we nonetheless require the basis of challenge to be directed specifically to the agreement to arbitrate before the court will intervene.

*Id.*

More recently, the Supreme Court extended these principles even further, to hold that, when the parties' contract delegates the question of the arbitrability of a dispute to an arbitrator, a court must enforce that provision, even if the defendant's claim that a particular dispute is subject to arbitration is "wholly groundless." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 528 (2019). Thus, once parties expressly delegate arbitrability to the arbitrator, "'courts must respect the parties' decision as embodied in the contract' and refer all arbitrability questions to arbitration." *McGee*, 941 F.3d at 866 (quoting *Henry Schein*, 139 S. Ct. at 531).

Considered together, these Supreme Court decisions mean that the plaintiffs' claim that the User Agreement as a whole and the Arbitration Provision specifically are void based on Kelcie Ingram's minority at the time of contracting is a question of arbitrability that must be referred to

the arbitrator.[3] First, even if there were no delegation of the question of arbitrability, *Prima Paint* on its own indicates that the validity of Kelcie Ingram's rescission of the contract as a whole, based on the doctrine of infancy, is a question reserved for the arbitrator under 9 U.S.C. § 4, because the plaintiffs use the defense to challenge the validity of the User Agreement as a whole and not the Arbitration Provision specifically. *See Prima Paint*, 388 U.S. 403–04 (1967) (holding that, because the plaintiff claimed that the entire agreement was fraudulently induced, the question had to be resolved by the arbitrator, but if it had claimed "fraud in the inducement of the arbitration clause itself—an issue which goes to the 'making' of the agreement to arbitrate," then the court could have adjudicated that question).

Moreover, even if the court construes the Complaint and the plaintiffs' arguments as a challenge to the enforceability of the Arbitration Provision itself, *Rent-A-Center* compels the conclusion that the validity of the Arbitration Provision is a question reserved for the arbitrator by virtue of the delegation provisions therein, which the plaintiffs do not challenge. Finally, even if the court believes that the defendant's assertion that the plaintiffs' claims in this lawsuit are subject to arbitration is utterly without merit, or "wholly groundless," *Henry Schein* prohibits denial of the Motion to Compel on that basis, because the fact remains that the enforceability of the contract, based on the validity of Kelcie Ingram's infancy defense as a basis for rescinding the contract, is a question of arbitrability that has been delegated to the arbitrator.

In sum, applying *Henry Schein* here, as it must, the court concludes that the plaintiff's claim that she has effectively repudiated the Arbitration Provision raises an arbitrability question

---

[3] Several states expressly recognize that a minor "must either accept or repudiate the entire contract" and "cannot retain [the contract's] fruits and at the same time deny its obligations." *E.K.D. ex rel. Dawes v. Facebook, Inc.*, 885 F. Supp. 2d 894, 899 (S.D. Ill. 2012) (applying California law).

that, by contract, has been reserved for the arbitrator, irrespective of the objective merit of the defendant's claim that the dispute is subject to arbitration. Likewise, because the plaintiffs challenge only the unconscionability of the Arbitration Provision as a whole, and not the unconscionability of the delegation provisions, that challenge too, under *Rent-A-Center*, must be referred to the arbitrator.

Having concluded that the Motion to Compel Arbitration must be granted, the court does not reach the defendant's alternative argument that the plaintiff is estopped from repudiating the agreement under the doctrine of infancy, since she misrepresented her age on entering into the User Agreement. Under *Henry Schein*, even if the court believes this argument to be "wholly groundless," 139 S. Ct. at 528, the arbitrator must decide it.[4]

### C.    Whether to Stay or Dismiss

The FAA instructs that, "upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration," the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration." 9 U.S.C.

---

[4] Tennessee courts indeed recognize that a minor who misrepresents his age upon contracting may later be estopped from rescinding the contract: "Fraud . . . will prevent the disability of infancy from being made available in equity. If an infant procures an agreement to be made through false and fraudulent representations that he is of age, a court of equity will enforce his liability as though he were an adult . . . ." *Harwell Motor Co.*, 337 S.W.2d at 768–69 (quoting *Tuck v. Payne*, 17 S.W.2d 8, 9 (Tenn. 1929)). In *Tuck*, however, the Tennessee Supreme Court explained that a defendant seeking to establish estoppel must show, not simply that the minor misrepresented his age, but also that the defendant dealt with the minor in "good faith," reasonably believing him to be of age based on a totality of the circumstances, including the "infant's" "personal appearance, family surroundings, and business activities, coupled with a misrepresentation or fraudulent concealment." *Tuck*, 17 S.W.2d at 9. Here, the apparently undisputed facts concerning the contract formation suggest no circumstances aside from the plaintiff's misrepresentation of her age that would establish the defendant's good faith and reasonableness in relying upon that misrepresentation. If the defendant's claim that arbitration is required in this case is not "wholly groundless," it is, at best, weak.

§ 3. In addition, "the entry of a stay order as opposed to a dismissal order" is particularly appropriate where "the district court perceives that it might have more to do than execute the judgment once arbitration has been completed." *See ATAC Corp. v. Arthur Treacher's, Inc.*, 280 F.3d 1091, 1099 (6th Cir. 2002).

The plaintiffs here specifically request a stay rather than dismissal (Doc. No. 11, at 4–5), and there is no suggestion that the other requirements for a stay under § 3 have not been met. In addition, the court finds it likely that "it might have more to do" than simply execute judgment upon the completion of arbitration. Accordingly, this matter will be stayed and administratively closed, subject to reopening upon the request of either party.

## IV.    CONCLUSION

For the reasons set forth herein, the court will grant the Motion to Compel but will stay the case rather than dismissing it in its entirety.

An appropriate Order is filed herewith.

_____
ALETA A. TRAUGER
United States District Judge